IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-41136
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ANGEL MOTA-AGUIRRE,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

August 17, 1999

Before JOLLY and SMITH, Circuit Judges, and TOM STAGG,[*] District
Judge.

E. GRADY JOLLY, Circuit Judge:

The appellant, Miguel Angel Mota-Aguirre, was sentenced to 87
months of imprisonment for one count of illegal reentry into the
United States after deportation in violation of 8 U.S.C. § 1326(a)
and (b)(2).  He only appeals his sentence.  Previously, on
October 31, 1983, Mota was issued an "Out-of-Country Conditional
Pardon" by the governor of Texas after being convicted in Texas
state district court of three separate counts of indecency with a
child.  Mota violated the conditions of this pardon by illegally
reentering the United States.  On appeal, Mota challenges the

_____

[*]District Judge of the Western District of Louisiana, sitting
by designation.

district court's calculation of his criminal history score under §§ 4A1.1(d) and 4A1.2(a)(2) of the United States Sentencing Guidelines. Mota contends that the district court erred in concluding that his conditional pardon constituted a criminal justice sentence under U.S.S.G. § 4A1.1(d). Next, Mota argues that his convictions for indecency with a child are "related" for the purposes of U.S.S.G. § 4A1.2(a)(2) and, therefore, the district court erred in adding six points to his criminal history score. We disagree. The terms of Mota's conditional pardon and Texas law both make clear that his pardon is best analogized to parole, which is listed as a criminal justice sentence under the guideline. Additionally, under United States v. Garcia, 962 F.2d 479 (5th Cir. 1992), Mota's characterization of his indecency convictions as "related" is meritless. Consequently, we affirm Mota's sentence in all respects.

I

A

Miguel Angel Mota-Aguirre is a Mexican national. On September 18, 1980, he was arrested and charged with two separate counts of indecency with a child in Jefferson County, Texas. Mota committed the offenses on September 25, 1979, and September 15, 1980. He pled no contest to the charges on April 28, 1981, and on May 15, 1981, the Texas state district court sentenced him to deferred adjudication on each offense. The Texas state district court revoked Mota's probation on October 22, 1981, when he committed a third child indecency offense. Consequently, on January 15, 1982, Mota was sentenced to eight years of imprisonment on each of the three indecency convictions and was incarcerated at the Texas Department of Corrections. Each of Mota's sentences was to run concurrently.

Next, on October 31, 1983, the governor of Texas issued Mota an "Out-of-Country Conditional Pardon," whereby he was released from prison into the custody of the Immigration and Naturalization Service,("INS"), for immediate deportation. In accordance with the terms of the pardon, Mota was deported to the Republic of Mexico on December 17, 1983. The conditional pardon further provided that if Mota returned to the United States illegally at any time, his pardon would be revoked and he would be returned to the Texas Department of Corrections. Notwithstanding the largesse, and the

threat, of the governor, Mota's absence from this country proved to be short-lived.

On July 25, 1997, the Jefferson County sheriff's office notified the INS that Mota, suspected of being an illegal alien, was being held in the Jefferson County jail in Beaumont, Texas. During a jailhouse interview with the INS, Mota admitted that he had illegally reentered the United States in June 1984, approximately six months after his conditional pardon.

B

On February 11, 1998, Mota was indicted on one count of illegal reentry into the United States after deportation under 8 U.S.C. § 1326(a) and (b)(2).[1] Mota pled guilty to the charge on June 8, 1998, and on September 11, 1998, he was sentenced to 87 months of imprisonment followed by three years of supervised release. In calculating Mota's sentence, the district court added a two-point increase to Mota's criminal history score under U.S.S.G. § 4A1.1(d), because he was under a criminal justice sentence at the time of his offense; that is, when Mota illegally reentered the United States his conditional pardon was subject to revocation. Furthermore, the district court treated two of Mota's convictions for indecency with a child as unrelated offenses under U.S.S.G. § 4A1.2(a)(2) and, in doing so, assigned him six criminal

---

[1]Mota's conditional pardon was revoked on April 2, 1998.

history points under the guideline.  Mota has timely appealed the sentence.

II

A

On appeal, Mota argues that the district court erred in increasing his criminal history score by two under U.S.S.G. § 4A1.1(d) because he was not under a criminal justice sentence when he illegally reentered the United States.  Specifically, Mota contends that at the time of the offense, he had been granted a conditional pardon, which contained no probation nor supervised release requirement.  Mota therefore maintains that his conditional pardon does not qualify as a criminal justice sentence for the purposes of the guideline.

U.S.S.G. § 4A1.1(d) instructs that the sentencing court "add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The term "criminal justice sentence" is defined in the commentary to the guideline as "a sentence . . . having a custodial or supervisory component, although active supervision is not required for this item to apply."  U.S.S.G. § 4A1.1(d), comment. (n.4).

Neither the plain language of the criminal history guideline nor its commentary, however, addresses the issue of first impression presented by this appeal--whether under U.S.S.G. § 4A1.1(d) a conditional pardon constitutes a criminal justice

5

sentence.  We agree with the district court that for the purposes of calculating Mota's criminal history score, his conditional pardon was the functional equivalent of parole.  Indeed, under Texas law, parole is generally classified as a conditional pardon. Ex parte Lefors, 303 S.W.2d 394, 397 (Tex. Crim. App. 1957) (citations omitted).  See also Clifford v. Beto, 464 F.2d 1191, 1194 (5th Cir. 1972) (citations omitted) (noting same).  This is so because parole and conditional pardons bear almost identical characteristics.  For example, while the conditional pardon exempts a defendant from punishment, parole conditionally releases a defendant from further punishment.  Lefors, 303 S.W.2d at 397. Furthermore, although Mota received a pardon from his convictions, like parole, his sentence remained in effect while he was granted liberty from confinement--but so long as he abided by the specified restrictions contained in his pardon.  Cf. id.  We are therefore satisfied that for the purposes of U.S.S.G. § 4A1.1(d), there exists no significant difference between parole and a conditional pardon.

Finally, we find no merit in Mota's position that his conditional pardon contained no supervisory requirement.  Although Mota's conditional pardon did not require active supervision, his pardon included a supervisory component in that the governor retained the power to revoke Mota's pardon upon a breach of its conditions and to remand the alien defendant to the custody of the Texas Department of Corrections.  We are satisfied that this kind

6

of supervisory component is sufficient to bring Mota's conditional pardon within the purview of U.S.S.G. § 4A1.1(d). See United States v. Labella-Szuba, 92 F.3d 136, 138 (2d Cir.), cert. denied, 519 U.S. 1047 (1996) (holding the sentencing court's authority to revoke the defendant's conditional discharge constituted sufficient supervision within the meaning of "criminal justice sentence" under the guideline). In any event, Texas law makes certain that Mota's conditional pardon contained some aspect of supervision. See Tex. Gov. Code Ann. § 508.114(b)("A parole officer or supervisor, on the request of the governor . . . shall be responsible for supervising an inmate placed on conditional pardon . . . .").

In sum, we conclude that the district court properly classified Mota's conditional pardon as a criminal justice sentence under the criminal history guideline, U.S.S.G. § 4A1.1(d).

### III

Mota's second argument is that the district court erred in treating his two prior convictions for indecency with a child as "unrelated" when calculating his criminal history score under U.S.S.G. § 4A1.2(a)(2).

U.S.S.G. § 4A1.2(a)(2) provides that "prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for the purposes of [assigning criminal history points under] § 4A1.1(a), (b), and (c)." Under the guideline, "prior sentences are considered related if they resulted from offenses that: (1)

7

occurred on the same occasion; (2) were part of a single common scheme or plan; or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n.3).

We are satisfied that none of these categories are applicable to the instant appeal. Indeed, Mota's objection to the district court's application of U.S.S.G. § 4A1.2(a)(2) is foreclosed by United States v. Garcia, 962 F.2d 479 (5th Cir. 1992). In Garcia, 962 F.2d at 482, we held that although the facts surrounding the cases may be similar, similar crimes are not necessarily related crimes. (Citations and internal quotations omitted). Thus, to prevail on his relatedness argument, Mota must show more than a mere factual relationship between the child indecency crimes. Id. This he has not done. We therefore reject Mota's argument that both of his state court convictions were part of a common scheme or plan. Not only did each of the indecency offenses involve two different victims, but contrary to Mota's argument on appeal, the crimes also occurred approximately one year apart. The record makes clear that Mota first exposed himself to a child on September 25, 1979, and that he committed the offense a second time on September 15, 1980. The similarity in the crimes, however, does nothing to advance Mota's argument on appeal. The fact that the defendant repetitiously commits the same offense, in and of itself, is insufficient to establish a common scheme for the purposes of U.S.S.G. § 4A1.2(a)(2). See United States v. Ford, 996 F.2d 83, 86

(5th Cir.), cert. denied, 510 U.S. 1050 (1994); Garcia, 962 F.2d at 482.

We similarly find no support for Mota's consolidation argument. We have previously rejected the proposition that cases must be considered consolidated simply because two convictions have concurrent sentences. Garcia, 962 F.2d at 482 (citations and internal quotations omitted). Likewise, the "'sentencing [of] two distinct cases on the same day [does not] necessitate[] a finding that they are consolidated.'" Id. (citing United States v. Metcalf, 898 F.2d 43, 46 (5th Cir. 1990)). As a matter of fact, nothing in the record can be read to suggest that Mota's state court cases for indecency with a child were consolidated: Each of the cases was assigned a separate docket number. The state of Texas never moved the state district court under Tex. Penal Code § 3.02 to consolidate the two cases. Nor did the Texas state district court enter an order of consolidation. We have previously recognized that such factors belie the defendant's contention that his cases were consolidated for sentencing purposes. See United States v. Huskey, 137 F.3d 283, 285-86 (5th Cir. 1998) (citing cases, which rejected consolidation argument where defendant sentenced under different docket numbers and there existed no order of consolidation); Garcia, 962 F.2d at 483 (holding same).

Accordingly, the district court properly concluded that Mota's child indecency convictions were unrelated under U.S.S.G. § 4A1.2(a)(2).

We therefore find no error in the district court's calculation of Mota's criminal history score under the sentencing guidelines. We therefore AFFIRM the sentence imposed and the judgment entered by the district court.

A F F I R M E D.